# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 16, 2003 Session

## STATE OF TENNESSEE v. KEVIN SCOTT OLMSTEAD

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-B-877     Cheryl Blackburn, Judge**

---

**No. M2002-02120-CCA-R3-CD - Filed August 15, 2003**

---

The defendant, Kevin Scott Olmstead, pled guilty to two counts of aggravated assault. Following a sentencing hearing, the trial court imposed two consecutive five-year sentences. On appeal, the defendant contends his sentences are excessive. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

David L. Raybin (on appeal) and Edward S. Ryan (at hearing), Nashville, Tennessee, for the appellant, Kevin Scott Olmstead.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 26, 2000, the defendant wounded the two victims, Nathaneal Shearon and Bobby Hunter, when he fired numerous shots into their vehicle. The defendant was indicted on two counts of attempted first degree murder but entered "open" guilty pleas to two counts of the amended charge of aggravated assault, a Class C felony. The trial court conducted a sentencing hearing and imposed consecutive five-year sentences. The defendant argues the trial court erred in imposing an effective ten-year sentence.

## PROOF AT SENTENCING

Nathaneal Shearon, a college football player, testified at sentencing that he had been involved in an altercation with the defendant's stepbrother, Michael Fox, approximately one month prior to the offenses. Shearon stated that on the date of the offenses at about 1:30 a.m., he was a passenger in a car with Bobby Hunter when they spotted Fox and the defendant gathered with a group of

people in a parking lot. Shearon said he and Hunter were traveling home when they saw a green Cadillac speed past them. Shearon testified they noticed the defendant, who was driving, and Fox were inside the Cadillac when they stopped beside it at a stoplight. According to Shearon, Fox also noticed him and indicated he wanted to fight. When the light turned green, the defendant drove away.

Shearon testified they then observed the Cadillac stopped in the right lane about fifty yards ahead of them. Shearon said that when Hunter drove past, the defendant "hit the gas," moved ahead of their vehicle, and began to swerve in front of it. Shearon testified the defendant stayed in front of them, and the defendant eventually stopped his car and motioned for Hunter to pass him. Shearon said that as Hunter drove past, the defendant sped up and blocked Hunter's car by cutting his wheels to the left.

Shearon, who was in the front passenger's seat of Hunter's car, testified the defendant fired numerous shots at them and then drove off. Shearon was shot in the hand and leg. He recounted how he felt "two bullets . . . rip through [his] hand" and later "realized [his] hand was pretty much gone." He said other bullets shattered his kneecap and lodged in his thigh muscle. Shearon stated he was hospitalized for over a week and underwent several surgeries and extensive rehabilitation. Shearon testified that neither he nor Hunter was armed with any kind of weapon.

Bobby Hunter testified he was shot in the hand, elbow, and upper arm, and that his injuries required surgery. He stated neither he nor Shearon was armed.

The defendant testified that on the night of the offenses, he and Fox had been to a nightclub with some friends. He said they were traveling home when the victim's car pulled behind them at a red light. The defendant stated he heard a car door slam, and he turned to see Shearon holding a pistol and running toward his car. The defendant said the victims pursued them after he drove off and ran the red light. According to the defendant, when he slowed to make a turn, the victims pulled along side his car, and Shearon stuck a gun out the window. The defendant admitted he fired into the victims' car until he emptied all nine rounds from his .40 caliber Glock handgun; however, he contended he shot while his car was traveling fifty miles an hour. The defendant conceded the victims fired no shots at him and no weapon was found in the victims' car.

The defendant admitted that he was convicted of an aggravated assault in 1992 in which a victim was shot. At sentencing, he denied committing the prior offense, but eventually conceded he provided the gun used to shoot the victim. He was sentenced to four years of community corrections for the 1992 conviction. He testified he violated the terms of his sentence due to his "drug problem," but after successful completion of the Lifelines drug treatment program, was again released on community corrections. The defendant indicated he had not used drugs since that time. The defendant admitted he was aware that he could not possess a firearm as a result of his prior felony conviction and that he illegally purchased the gun used in the instant offenses.

Other witnesses testified the defendant was a good employee, had successfully completed the Lifelines program after his prior revocation, and had helped other young people to secure rehabilitative treatment.

## TRIAL COURT'S FINDINGS

The trial court applied the following enhancement factors: factor (2), the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; factor (9), the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community; factor (10), the defendant possessed or employed a firearm during the commission of the offense; and factor (12), the felony resulted in bodily injury and the defendant had previously been convicted of a felony that resulted in death or bodily injury. *See* Tenn. Code Ann. § 40-35-114(2), (9), (10), (12) (Supp. 2002).[1] The trial court also found the defendant's decision to plead guilty and proof that he had "conquered a drug problem" were proper mitigating factors. *See* Tenn. Code Ann. § 40-35-113(13). Weighing these factors, it imposed a five-year sentence for each conviction.

The trial court then imposed consecutive sentencing based on its finding that the defendant was a dangerous offender whose behavior indicated little or no regard for human life, and no hesitation about committing a crime in which the risk to human life was high. *See* Tenn. Code. Ann. § 40-35-115(b)(4) (1997). The trial court noted the defendant fired nine shots at the victims with his semi-automatic weapon, and the defendant's 1992 aggravated assault conviction also involved a shooting which resulted in bodily injury to the victim. The trial court found that the aggregate term of the consecutive sentences reasonably related to the severity of the offenses and the public needed protection from any further criminal conduct by the defendant.

## STANDARD OF REVIEW

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for a Class C felony shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the

---

[1]The trial court recited the enhancement factors utilizing the numbers prior to the amendment of the statute. *See* Tenn. Code Ann. § 40-35-114 (1997). We have used the numbers that coincide with the amended statute. *See id.* § 40-35-114 (Supp. 2002).

sentencing act and its findings are supported by the record.  State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002); *see* Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments. The range of punishment for the Class C felony of aggravated assault as a Range I offender is from three to six years.  *See* Tenn. Code Ann. § 40-35-112(a)(3).

## I.  LENGTH OF THE SENTENCES

The defendant contends the use of the firearm was an element of the offenses because the indictment charged the defendant with attempted first degree murder of each victim "by shooting [the victim] with a firearm" and was, therefore, improperly applied as an enhancement factor. *See id.* § 40-35-114(10) (Supp. 2002).  The defendant pled guilty under the indictment to the amended charges of aggravated assault.  The use or display of a deadly weapon is one of the alternative elements of the offense of aggravated assault.  *See id.* § 39-13-102(a)(1)(B).  However, the other alternative element of the offense is the infliction of "serious bodily injury."  *See id.* § 39-13-102(a)(1)(A).  At the beginning of the defendant's sentencing hearing, the prosecutor made reference to these alternative theories and informed the trial court that the state was relying upon the "serious bodily injury" theory as an element of aggravated assault.  The trial court then correctly observed that enhancement factor (7), particularly great personal injuries, is an element of that offense and could not be an enhancement factor.  *See id.* § 40-35-114(7) (Supp. 2002).  Because the use of a firearm was not an element of these aggravated assaults, the trial court properly relied upon enhancement factor (10).  *See* State v. Carter, 986 S.W.2d 596, 598 (Tenn. Crim. App. 1998).

The defendant contends enhancement factor (12), the felony resulted in bodily injury and the defendant had a prior felony conviction resulting in bodily injury, is inapplicable because there was no evidence that the prior aggravated assault resulted in bodily injury.  *See* Tenn. Code Ann. § 40-35-114(12) (Supp. 2002).  To the contrary, the defendant testified the victim of the prior assault was shot and he paid restitution toward the victim's hospital bill.  The trial court properly applied this enhancement factor.

The defendant contends the trial court erred in not applying four mitigating factors: mitigating factor (2), the defendant acted under strong provocation; mitigating factor (3), substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense; mitigating factor (11), the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct; and mitigating factor (12), the defendant acted under duress.  *See id.* § 40-35-113(2), (3), (11), (12) (1997).  The only proof in the record supporting the application of these factors was the defendant's testimony, which the trial court specifically rejected after finding it was not credible.  This court is in no position to second-guess the trial court's credibility determinations. Therefore, we cannot conclude the trial court erred in failing to apply these factors.

The defendant further argues the trial court erred in not applying in mitigation the defendant's positive work record, assisting young people in getting into treatment programs, refraining from drug usage, and being a "useful, respected citizen."  *See id.* § 40-35-113(13) (1997). However, none of these miscellaneous attributes were specifically argued as mitigating factors. Regardless, we are unable to conclude that their consideration justifies a reduction in the sentences.

In summary, we find the trial court properly applied four enhancement factors and properly considered the mitigating factors argued by the defendant. The five-year sentences are proper.

## II. CONSECUTIVE SENTENCING

The defendant maintains the trial court erred in finding him to be a "dangerous offender." A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. Tenn. Code Ann. § 40-35-115(b)(4); *see also* State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). Furthermore, in the event the trial court finds a defendant is a "dangerous offender," it must also determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; and (2) serve to protect the public from further criminal conduct by the offender. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). The record before us clearly establishes that the trial court made these exact findings. Further, the trial court's conclusions are supported by the record. Therefore, the defendant has failed to establish that the trial court erred in imposing consecutive sentences.

## CONCLUSION

At oral argument, defense counsel stated his ultimate request is that the sentences be modified to an effective term of six years so that the defendant will be eligible for certain rehabilitative programs in Davidson County. In this case, the trial court has imposed a lawful sentence by following the statutory sentencing procedure, has given due consideration and proper weight to the factors and sentencing principles, and has made findings of fact adequately supported by the record; thus, this court may not modify the sentence even if it would have preferred a different result.[2] State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000). We affirm the judgments of the trial court.

JOE G. RILEY, JUDGE

[2]By using this terminology, we are not suggesting that we would, in fact, have preferred a different result.